**In re John D. ALLEN, a widower, dba Southeastern Cedar Products, Debtor.**

**Bankruptcy No. B79–1540S.**

United States Bankruptcy Court,
W. D. Washington,
at Seattle.

April 8, 1980.

A. J. Hutton, Jr., Seattle, Wash., for debtor.

Gerald G. Tuttle, Seattle, Wash., for First Nat. Bank of Ketchikan.

## NATURE OF PROCEEDINGS

SIDNEY C. VOLINN, Bankruptcy Judge.

This matter was initiated by Debtor's Motion for Order to Show Cause why the United States Small Business Administration (SBA) and the First National Bank of Ketchikan should not be held in contempt for proceeding with a deed of trust sale of Debtor's property after notice of his having filed a Chapter XII petition and the effect of the Rule 12–43 stay, and further, why such sale should not be annulled.

The Debtor's principal contention is that Rule 12–43 of the Bankrupt's Act stayed the sale of his property and, further, that if the sale is allowed to stand, rehabilitation in this proceeding is not possible. The contempt charge has not been pressed.

## FACTS

The Debtor, John D. Allen, dba Southeastern Cedar Products, filed a Chapter XII petition on September 5, 1979. Property located in Ketchikan, Alaska, was scheduled for deed of trust sale by Ketchikan Title Agency on September 6, 1979, for the benefit of First National Bank of Ketchikan and the SBA, secured creditors of the Debtor.

Counsel for the Debtor notified the SBA, the Bank, and Ketchikan Title Agency of the filing of the Chapter XII petition and that Bankruptcy Procedure Rule 12–43 stayed the sales. As a result, the Bank did not proceed with its sales, but the SBA arranged for the substitution of John H. Delano, an employee of the SBA, for Ketchikan Title Agency, Inc., as trustee under its two deeds of trust and proceeded with its sale on the morning of September 6, 1979, as scheduled. First National Bank of Ketchikan purchased the property at the sale for $573,115.00.

The Debtor's schedules value the Ketchikan property at $1,950,000 based on a September 15, 1978, appraisal. It is the major asset available for an arrangement. The SBA held a fourth Deed of Trust on the property, securing a loan of $414,048.38. The Bank held a fifth Deed of Trust on the property which secured a loan of $156,-730.43. The total secured obligation on the property was scheduled at approximately $1,250,060.75 as of November 26, 1979.

The Debtor contends that the equity in the Ketchikan property provides a basis for rehabilitation. His only other real property is a residence, valued in the schedules at $35,600.00, on which he claims a $20,000.00 homestead exemption.

## LAW

The Debtor takes the position that, as a matter of law, the SBA was stayed from proceeding with its sale by virtue of the stay imposed on creditors by Bankruptcy Rule 12–43. The SBA contends that the stay cannot restrain a governmental agency, because of sovereign immunity which has not been waived.

The SBA relies on *In re Collins Enterprises, Inc.*, an unreported Alaska District Court decision by Judge James M. Fitzgerald, Case No. A–77–45 (1977), and *United States v. Mel's Lockers*, 346 F.2d 168 (10th Cir. 1965). Both cases held that the automatic stay of Chapter XI cannot be read as a waiver of the SBA's sovereign immunity from suit or restraint.

On the other hand, *In re Delta Food Processing Corporation*, 446 F.2d 437, 438 (5th Cir. 1971) held that the SBA and the Economic Development Administration (EDA) were subject to the automatic stay in a Chapter X proceeding, stating:

"Chapter X is employed where a reorganization, not a liquidation, is desired. The provisions and language of Chapter X contemplate a period during which an impartial trustee will examine the debtor's affairs to determine whether corporate existence and continuity can be maintained. In order for this provision to be effective, there must be a period of time during which all creditors' rights are stayed until the investigation can be completed and a plan of reorganization presented. To our minds, the approval and allowance of a Chapter X petition automatically provides this stay. Ipso facto, unless this stay is applicable to every creditor, including governmental agencies, it will be of no effect. The plethora of governmental bodies which control the operation and regulation of business today clearly warrant the use of injunctive process against them by the Chapter X reorganization court. Were it to be otherwise, there would be little chance of a company of any size at all successfully reorganizing under the provisions of Chapter X without the sanction and approval of one or more of these governmental agencies."

This reasoning has great force particularly where the governmental agency is engaged in lending transactions which involve arrangements with private lenders. Indeed, were it not for the last minute intervention of the SBA in the foreclosure, the issue of sovereign immunity could not have been raised.

Although Chapter XII is applicable to a different kind of debtor than Chapter X, it is a rehabilitation proceeding designed to affect the rights of secured creditors, Sec. 406(1) of the Bankruptcy Act, 11 U.S.C. Sec. 806. The statutory formulation of Chapter XII closely resembles that of Chapter X in terms of language and intent.

Further, the Court *In Delta Food Processing* noted that Sec. 263 of Chapter X, 11 U.S.C. Sec. 663, would not affect or apply to creditors of a corporation under a mortgage insured pursuant to the National Housing Act. The doctrine of *expressio unius est exclusio alterius* was applied, since the Act did not make a similar exclusion for the SBA. Chapter XII contains a similar provision in Sec. 517 of the Bankruptcy Act, 11 U.S.C. Sec. 917, so the Court's reasoning would also apply here.

## CONCLUSION

On the basis of the record, all that is before the Court is a Chapter XII petition and this Order to Show Cause. It must be assumed, at this stage of the case, that the petition was properly filed and that a real property arrangement is contemplated by the Debtor. The sale of the Debtor's Ketchikan property by the SBA to First National Bank of Ketchikan should be voided and the property returned to the Debtor. The Debtor should be allowed a reasonable period of time to investigate and examine his opportunities for rehabilitation to which he is entitled under Chapter XII. If this turns out to be a liquidation, not a rehabilitation, or the rights of secured creditors would not be affected, the reasoning of *Delta Food Processing* may not apply. If it appears that such is the case, then the SBA

would be entitled to affirmatively move to lift the stay, in accordance with Rule 12–43(d) of Bankruptcy Procedure.

Although the Bankruptcy Code is not applicable, it is informative to look at its stay provision, as to governmental units: 11 U.S.C. Sec. 362 provides that the stay is applicable to all "entities", which is defined to include governmental units. 11 U.S.C. Sec. 101(14), 11 U.S.C. Sec. 106(c)(1). An exception to the automatic stay is made under Sec. 362(b) for governmental action or proceedings to enforce its police or regulatory powers or action taken by the Secretary of Housing and Urban Development to foreclose certain mortgages or deed of trust, cf. 9 *Bankr.L.Ed.* Sec. 15.21; 2 *Collier on Bankruptcy* (15th Ed.) Par. 362.02; House Rep. No. 95.595, p. 342; Senate Rep. No. 95–989, p. 51. The doctrine of *expressio unius est exclusio alterius* applied in *Delta Food Processing* could also be applied to stay SBA foreclosure proceedings, since they are not included in the exceptions to the stay set out in Sec. 362(b).

This Memorandum and Order shall constitute this Court's Findings of Fact, Conclusions of Law and Judgment, in accordance with Federal Rule of Civil Procedure 52.

It is so ORDERED.